IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 14 2022

TAMMY H. DOWNS, CLERK

By: _____
DEP CLERK

REGINALD HARRIS,
LATASHA MAXWELL, Individually,
and as Next Friend of
LATASHJA HARRIS, a Minor,
MONTAVION HARRIS,
MONTASHIA HARRIS,
KEVONTAY BARNES,
LATRICE ROBINSON, as Next Friend of
PAICHANCE JAMES, a Minor,
MAKISHA MAXWELL, as Next Friend of
KEVIN YOUNG, a Minor,

     Plaintiffs,

     v.

CITY OF LITTLE ROCK, a municipality,
KENTON BUCKNER, Individually and
in his Official Capacity,
ROBERT BELL, Individually,
MATT NELSON, Individually,
TRAVIS CUMMING, Individually,
CEDRIC NELSON, Individually,
BRAD SILAS, Individually,
RUSS LITTLETON, Individually, and
LONI LICHTI, Individually,

     Defendants.

Case No.: 4:22CV853-JM

***\*\*\*JURY TRIAL DEMANDED***

This case assigned to District Judge Moody
and to Magistrate Judge Harris

## **COMPLAINT**

    NOW COME, Plaintiffs, REGINALD HARRIS, LATASHA MAXWELL, Individually

and as Next Friend of LATASHJA HARRIS, a Minor, MONTAVION HARRIS, MONTASHIA

HARRIS, KEVONTAY BARNES, LATRICE ROBINSON, as Next Friend of PAICHANCE

JAMES, a Minor, and MAKISHA MAXWELL, as Next Friend of KEVIN YOUNG, a Minor

(hereafter "PLAINTIFFS"), by and through their attorneys, LAUX LAW GROUP and BEN

CRUMP, PLLC, and for their cause of action, states as follows:

## INTRODUCTION

The Fourth Amendment to the United States Constitution reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

## JURISDICTION AND VENUE

1.     This action arises under the United States Constitution, particularly under the Fourth and Fourteenth Amendments, and under law, particularly the Civil Rights Act of 1871, 42 U.S.C. § 1983 and Arkansas state law.  A federal claim is also brought under The Americans with Disabilities Act (hereafter "ADA"), 42 U.S.C. § 12101, *et seq.*, §§ 504 (hereafter "Section 504") and 505 of the Rehabilitation Act of 1973, and 29 U.S.C. § 794, for the failure of the City of Little Rock to properly accommodate and implement adequate policies for serving search warrants upon disabled individuals.  PLAINTIFFS bring claims for compensatory damages based on the City of Little Rock's discriminatory practices toward the disabled.  This Honorable Court has jurisdiction by virtue of 28 U.S.C. §§ 1331 and 1367.  Venue is founded in this Court upon 28 U.S.C. § 1391 as the acts of which PLAINTIFFS complain arose in this District.

2.     This civil action is re-filed, with the current pleading, pursuant to the Arkansas "savings statute," AC.A. § 16-56-126.  The action was previously filed in federal court in the Eastern District of Arkansas, as *Harris, et al. v. City of Little Rock, et al.,* Case No. 4:20-CV-259-JM.

3.     On September 15, 2021, the parties to *Harris, et al. v. City of Little Rock, et al.,* Case No. 4:20-CV-259-JM jointly stipulated to the voluntary dismissal of that cause without prejudice.  See September 15, 2021 Joint Stipulation of Dismissal Without Prejudice, attached as Exhibit A.  The Eighth Circuit applies AC.A.§ 16-56-126 to §1983 claims, and PLAINTIFFS, in bringing the current cause, invoke said Arkansas statute.  *Whittle v. Wiseman,* 683 F.2d 1128, 1129 (8th Cir. 1982).

## PARTIES

4.      At all relevant times, PLAINTIFFS were citizens of the United States of America and were, therefore, entitled to all legal and constitutional rights afforded citizens of the United States of America. At all relevant times, PLAINTIFFS resided in Pulaski County, Arkansas.

5.      REGINALD HARRIS and LATASHA MAXWELL are a married couple and the legal and biological parents of LATASHJA HARRIS, a minor. At the time of the March 29, 2017 LRPD "no-knock" raid which forms the basis of PLAINTIFFS' complaint, LATASHJA HARRIS was 12 years old.

6.      MONTAVION HARRIS is an adult child of REGINALD HARRIS and LATASHA MAXWELL. At the time of the March 29, 2017 LRPD "no-knock" raid which forms the basis of PLAINTIFFS' complaint, MONTAVION HARRIS was 13 years old.

7.      MONTASHIA HARRIS is an adult child of REGINALD HARRIS and LATASHA MAXWELL.

8.      KEVONTAY BARNES is the adult nephew of REGINALD HARRIS and LATASHA MAXWELL. At the time of the March 29, 2017 LRPD "no-knock" raid which forms the basis of PLAINTIFFS' complaint, KEVONTAY BARNES was a 15 year old minor.

9.      LATRICE ROBINSON is the legal and biological parent of PAICHANCE JAMES. LATRICE ROBINSON is a close family friend of REGINALD HARRIS and LATASHA MAXWELL. At the time of the March 29, 2017 LRPD "no-knock" raid which forms the basis of PLAINTIFFS' complaint, PAICHANCE JAMES was 11 years old.

10.      MAKISHA MAXWELL is the legal and biological parent of KEVIN YOUNG, who is a minor and the nephew of REGINALD HARRIS and LATASHA MAXWELL. At the

3

time of the March 29, 2017 LRPD "no-knock" raid which forms the basis of PLAINTIFFS' complaint, KEVIN YOUNG was 4 years old.

11.     At all relevant times, the CITY OF LITTLE ROCK (hereafter "CITY") was a municipality organized and existing under the laws of the State of Arkansas.  At all relevant times, the CITY was located in the County of Pulaski, State of Arkansas, and was the employer of the individually named defendants.  At all relevant times, the CITY is and was empowered, funded and directed to pay any § 1983 civil rights or intentional tort judgment for compensatory damages, actual damages and attorney fees, if applicable, for which any CITY employee acting within the scope of his or her employment is found liable.

12.     Accordingly, the CITY is an indemnification party regarding the acts and/or omissions of which PLAINTIFF complains.  As reflected in the matter of *Ellison v. Lesher, et al.*, 4:11-CV-752 BSM, the CITY has the authority to provide for the indemnification of CITY police officers accused of civil rights violations and intentional torts committed within the scope of their employment, and its common practice was to authorize indemnification for such officers.

13.     At all relevant times, the CITY participated in the Municipal Legal Defense Program which is offered by the Arkansas Municipal League to Arkansas towns and cities.  The acts and omissions of which PLAINTIFF complains constitute a civil rights lawsuit against the CITY and the individually named defendants.  The Arkansas Municipal Legal is a primary or secondary indemnification party regarding the acts and omissions of CITY and the individually named defendants of which PLAINTIFF herein complains.

14.     At all relevant times, the CITY delegates its policy-making authority to its chiefs of police, including Defendant, KENTON BUCKNER (hereafter "DEFENDANT BUCKNER"), and his predecessors, including Stuart Thomas.

4

15.     At all relevant times, DEFENDANT BUCKNER, was employed by the CITY, and acted under the color of state law, within the scope of his employment.  At all relevant times, DEFENDANT BUCKNER had the ultimate responsibility within the Little Rock Police Department (LRPD) for the protection of life, the upholding of the United States Constitution, the preservation of law and order, the investigation of all crimes and the enforcement of the laws of the State of Arkansas.

16.     At all relevant times, the CITY delegated to DEFENDANT BUCKNER final policy-making authority to create, adopt and implement police policies within the LRPD whether formal or informal.  At all relevant times, DEFENDANT BUCKNER was responsible for assuring the enforcement of LRPD General Orders, Rules & Regulations and Divisional Operational Procedures (collectively "policy" or "policies") among LRPD officers.  As Chief of Police of LRPD, and pursuant to the authority vested in him, DEFENDANT BUCKNER was empowered to initiate procedural changes to address or remedy any unconstitutional trend or pattern that he identified during his tenure as chief.

17.     At all relevant times, DEFENDANT BUCKNER had the final authority in terms of promulgating policies for enactment at the LRPD–whether those policies were formal or informal– via memoranda to his LRPD subordinates, down the chain of command.

18.     At all relevant times, including March 29, 2017, Defendants, BRAD SILAS (hereafter "DEFENDANT SILAS"), LONI LICHTI (hereafter "DEFENDANT LICHTI") and RUSS LITTLETON (hereafter "DEFENDANT LITTLETON") (collectively "NARCOTICS DEFENDANTS"), and each of them, were employed by the CITY as LRPD police officers, working in the LRPD Narcotics Unit and acting under the color of state law, within the scope of their employment.

5

19.     At all relevant times, including March 29, 2017, Defendants, ROBERT BELL (hereafter "DEFENDANT BELL"), MATT NELSON (hereafter "DEFENDANT M. NELSON"), TRAVIS CUMMING (hereafter "DEFENDANT CUMMING") and CEDRIC NELSON (hereafter "DEFENDANT C. NELSON") (collectively "SWAT DEFENDANTS"), and each of them, were employed by the CITY as LRPD police officers and were members of the LRPD Special Weapons and Tactics (SWAT) Unit, acting under the color of state law, within the scope of their employment.

## BACKGROUND FACTS

20.     At all relevant times, the LRPD had a Narcotics Unit which was responsible for the investigation of criminal offenses related to the trafficking of controlled substances. At all relevant times, NARCOTICS DEFENDANTS were members of the Narcotics Unit. The Narcotics Unit is responsible for the investigation of criminal offenses related to the trafficking of controlled substances. According to the CITY, during 2016, the Narcotics Unit arrested 982 individuals and charged them with 1,965 felonies and 1,317 misdemeanor crimes. The Narcotics Unit sometimes enlists the assistance of confidential informants ("C.I.s") to provide information on potential drug traffickers and to participate in drug stings in the role of drug purchaser for which the C.I.s are monetarily or otherwise compensated.

21.     The SWAT Unit is staffed by a Lieutenant (Unit Commander), two (2) sergeants (Team Leaders) and twenty-five (25) officers. At all relevant times, the LRPD had a SWAT policy which reflects that the SWAT Unit's "primary mission" is "to provide support to the Department during operations that require special training and equipment to resolve high-risk situations." The LRPD's SWAT policy states that "[e]ach tactical situation is unique and may require different

6

responses." According to the CITY, in 2016, the SWAT Unit responded to seven (7) SWAT call-outs and executed eighty-nine (89) high-risk search warrants.

22.     The SWAT Unit is typically outfitted with an array of weaponry, including a carbine assault rifle, which is comparable to an AR-15. The assault rifle of choice most often at the LRPD is the .223 caliber Bushmaster with EOTech holographic laser scope or Bushmaster M4-Type Carbine. A .223 caliber Bushmaster carbine assault rifle and ammunition are depicted in Photographs 1-2 (below) respectively:

 

Photograph 1                                           Photograph 2

23.     Both the LRPD SWAT Unit and Narcotics Unit are under the direct command of the Special Investigations Division Commander who reports directly to the LRPD chief of police. From June 2014 until late 2018 the chief of police was DEFENDANT BUCKNER.

24.     A "no-knock" warrant is defined as a search warrant that authorizes police officers to enter certain premises without first knocking and announcing their presence or purpose prior to entering the premises. In order to obtain a "no-knock" warrant, a police officer must submit an affidavit to a judge or magistrate whom, upon receiving and reviewing said affidavit, will decide whether to authorize an exception to the "knock and announce" rule based on the facts presented in the affidavit.

7

25.     At all relevant times, DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and SWAT DEFENDANTS, and each of them, were trained in the Fourth Amendment and proper search and seizure law and were further that aware that affidavits submitted to judges or magistrates by officers seeking to obtain "no-knock" warrants must be premised on a good faith determination that probable cause exists.

26.     At all relevant times, DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and SWAT DEFENDANTS, and each of them, knew that the Fourth Amendment's requirement that a specific place be described when applied to dwellings refers to a single family unit (the residence of one person or family).   At all relevant times, DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and SWAT DEFENDANTS, and each of them, knew that a warrant which describes an entire building when cause is shown for searching only one apartment unit is void.

27.     At all relevant times, DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and SWAT DEFENDANTS, and each of them, knew that an issued warrant which allows a police officer to enter a dwelling located at one address does not permit the police officer to enter another dwelling situated at another address on the basis of the warrant for the initial dwelling.

28.     At all relevant times, DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and SWAT DEFENDANTS, and each of them, knew that "no-knock" warrants were reserved for "high-risk situations," and that it is unconstitutional and unlawful to knowingly submit affidavits which contain material misrepresentations of fact or are otherwise untruthful to judges or magistrates.   At all relevant times, DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and SWAT DEFENDANTS, and each of them, were aware of the inherently dangerous nature of SWAT entries.

8

29.     Prior to April 2014, the CITY and DEFENDANT BUCKNER knew that the NARCOTICS DEFENDANTS and other CITY employees made material misrepresentations and omissions to judges in order to gain "no-knock" entry into homes despite the fact that the owners and residents of those homes did not meet the required criteria and did not constitute a "high risk situations."

30.     Moreover, the CITY and DEFENDANT BUCKNER knew that the NARCOTICS DEFENDANTS and other CITY employees often presented affidavits for "no-knock" warrants to judges in which material misrepresentations and untruths were contained.

31.     Furthermore, at all relevant times, the CITY and DEFENDANT BUCKNER knew that the NARCOTICS DEFENDANTS, and each of them, had a practice of utilizing C.I.s that were known to be unreliable, to provide false information and to have prior convictions for crimes involving false statements and deception.  They knew that the NARCOTICS DEFENDANTS' failure to adhere to constitutional requirements of the Fourth Amendment would result in C.I.s becoming motivated to lie for monetary reasons or otherwise exploit the system for personal benefit.

32.     Despite this knowledge, in or around April 2014, and for many years prior thereto, there existed an unconstitutional official policy at the LRPD (hereafter "mandatory SWAT policy") whereby SWAT Unit involvement was required for every search warrant executed by the LRPD, regardless of the fact that the constitutional threshold for this type of entry was often not satisfied in the circumstances presented to the NARCOTICS DEFENDANTS and SWAT DEFENDANTS.

33.     An excerpt from an April 7, 2014 LRPD Memorandum from an LRPD sergeant reads as follows:

"The reason SWAT was used is because many times guns and violence are associated with narcotics. *It is a mandate from the Office of the Chief of Police that the SWAT team execute all search warrants.*" (emphasis added).

34. A "policy," as defined by the Eighth Circuit Court of Appeals in *Mettler v. Whitledge*, 165 F.3d 1197 (1999), is "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."

35. A *Monell* "custom" is defined as a practice of municipal officials that is not authorized by written law, but which is so permanent and well-settled as to have the force of law.

36. Pleading alternately, at all relevant times, including prior to April 2014, there existed an unconstitutional *Monell* municipal "custom" at the LRPD whereby LRPD chiefs of police, including DEFENDANT BUCKNER, knowingly authorized the use of the SWAT Unit for every search warrant executed by the LRPD or in situations not reasonably characterized as "high risk" despite the fact that such a custom constitutes a continuing violation the Fourth Amendment.

37. At all relevant times, DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and SWAT DEFENDANTS and each of them, knew or should have known that the mandatory SWAT policy did not comport with the liberty protections established and enshrined in the United States Constitution, particularly, the Fourth and Fourteenth Amendments.

38. At all relevant times, including during various IAD investigations resulting from the "no-knock" narcotics raids, DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and SWAT DEFENDANTS, and each of them, knew that the "no-knock" narcotics raids executed by the NARCOTICS DEFENDANTS were in violation of LRPD policy and the United States Constitution.

39. Despite this knowledge and despite the inherently dangerous nature of the "no-knock" narcotics raids conducted by the NARCOTICS DEFENDANTS and SWAT

DEFENDANTS, DEFENDANT BUCKNER continued to promulgate an unconstitutional official policy and/or authorize, support and maintain a *Monell* "custom" which was unconstitutional and posed an unreasonable threat of harm to the persons and property of Little Rock citizens.

### THE UNCONSTITUTIONAL AND ILLEGAL "NO-KNOCK" RAID OF THE DWELLING LOCATED AT 1903 S. IZARD EXECUTED BY NARCOTICS DEFENDANTS AND SWAT DEFENDANTS

40.     On March 29, 2017, Plaintiff, LATASHA MAXWELL (hereafter "LATASHA") lived at 1903 S. Izard St., Little Rock, Arkansas, with her children.  Though LATASHA and Plaintiff, REGINALD HARRIS (hereafter "REGINALD"), were legally married on March 29, 2017, they were separated at the time.  REGINALD did not live at 1903 S. Izard Street on March 29, 2017.  At no time was REGINALD on the lease for the residential address at 1903 S. Izard Street.

41.     On or about March 13, 2017, DEFENDANT SILAS submitted an affidavit to Judge Alice Lightle wherein he requested Judge Lightle authorize the execution of a "no-knock" search warrant on 1903 S. Izard Street.

42.     In his affidavit, DEFENDANT SILAS stated that on March 13, 2017, he was contacted by a "reliable" C.I.  The C.I. claimed that a 40-year-old black male, who was 6'1" in height, was selling large quantities of marijuana out of the home at 1903 S. Izard Street.

43.     According to DEFENDANT SILAS' affidavit, on March 13, 2017, he and DEFENDANT LITTLETON met with the "same reliable" C.I. to arrange a controlled drug buy, giving the C.I. one hundred dollars ($100).

44.     According to DEFENDANT SILAS' affidavit, DEFENDANT SILAS and DEFENDANT LITTLETON, in their vehicle, followed the C.I., who was on foot, to 1903 S. Izard Street.

45.     DEFENDANT SILAS and DEFENDANT LITTLETON each lost sight of the C.I. prior to the C.I. reaching the front door of 1903 S. Izard Street.  DEFENDANT SILAS and DEFENDANT LITTLETON each lost sight of the C.I. for approximately five (5) minutes.

46.     Neither DEFENDANT SILAS nor DEFENDANT LITTLETON saw the door to 1903 S. Izard Street open.

47.     According to DEFENDANT SILAS' affidavit, he DEFENDANT LITTLETON and the C.I. met up after the C.I. allegedly returned from conducting a controlled drug buy at 1903 S. Izard Street.  The C.I. allegedly told DEFENDANT SILAS and DEFENDANT LITTLETON that he purchased $100 worth of marijuana from an unidentified black male who was 6'1" in height.

48.     Neither DEFENDANT SILAS nor DEFENDANT LITTLETON video- or audio-recorded any aspect of their purported dealings with the C.I. mentioned in DEFENDANT SILAS' affidavit.

49.     DEFENDANT SILAS' affidavit contains material misrepresentations of fact and material omissions.

50.     For instance, DEFENDANT SILAS' affidavit statement that he had "been a certified Police Officer employed by the Little Rock Police Department for approximately 14 years" on March 13, 2017, the date of his affidavit signature, is not accurate.

51.     On March 13, 2017, DEFENDANT SILAS presented his affidavit to Judge Lightle. Based on the information contained in DEFENDANT SILAS' affidavit, Judge Lightle issued a warrant for the "residence...and the person of...6'-1...at the residence located at 1903 Izard Street..." Judge Lightle's warrant permitted NARCOTICS DEFENDANTS to enter the premises of 1903 S. Izard Street.

12

52.     In fact, no adult black male resided at 1903 S. Izard in March 2017.

53.     DEFENDANTS cannot prove that any adult black male resided at 1903 S. Izard in March 2017.

54.     Prior to March 29, 2017, NARCOTICS DEFENDANTS met and discussed preparation for the "no-knock" warrant execution they intended to conduct on the dwelling located at 1903 S. Izard Street.

55.     Prior to March 29, 2017, official SWAT forms were filled out which reflect that there was a briefing in regard to the planned "no-knock" warrant execution on 1903 S. Izard Street.

56.     Regarding the inhabitant(s) of 1903 S. Izard or "suspect," the official SWAT forms reflect that on March 29, 2017 the NARCOTICS DEFENDANTS did not know if the suspect had a known violent history.  On September 5, 2017, they did not know if the suspect is on parole or mentally unstable.

57.     On March 29, 2017, the NARCOTICS DEFENDANTS did not know if the suspect was known or believed to be known to possess a weapon.  On March 29, 2017, the NARCOTICS DEFENDANTS did not know if there were any children, elderly persons or disabled persons present at the site.

### March 29, 2017 "No-Knock" Raid of 1903 S. Izard Street

58.     On March 29, 2017, at approximately 8:45 a.m., LATASHA was at her home at 1903 S. Izard with her children, MONTAVION, a minor at the time, MONTASHIA and LATASHJA, a minor. KEVONTAY BARNES, PAICHANCE JAMES and KEVIN YOUNG, all minors at the time, were also present. REGINALD, who did not live at 1903 S. Izard, was visiting the residence that morning, helping with the children.

13

59.     Within seconds of the front door explosion, NARCOTICS DEFENDANTS and SWAT DEFENDANTS stormed into the residence at 1903 S. Izard Street with their assault rifles drawn and raised toward PLAINTIFFS.

60.     Around that time, DEFENDANT LICHTI appeared at the door of 1903 S. Izard with a bandana covering her face.

61.     NARCOTICS DEFENDANTS and SWAT DEFENDANTS filtered through the home, screaming at PLAINTIFFS while threatening them with bodily harm and death. NARCOTICS DEFENDANTS and SWAT DEFENDANTS physically assaulted PLAINTIFFS, including the minor children.

62.     NARCOTICS DEFENDANTS and SWAT DEFENDANTS caused significant property damage to the residence at 1903 S. Izard Street.

63.     None of NARCOTICS DEFENDANTS announced their presence or identified themselves as police officers.

64.     REGINALD—who stands five (5) feet, eight (8) inches tall[1]—was arrested and charged based on marijuana NARCOTICS DEFENDANTS found in his home.

65.     Though DEFENDANT SILAS attested to Judge Lightle that massive quantities of marijuana would be found at 1903 S. Izard Street, no massive quantities of that drug were found there.  Instead, NARCOTICS DEFENDANTS found only a small bag of marijuana.

66.     In Pulaski County Criminal Case No. CR 17-2708, *State of Arkansas v. Reginald Harris*, REGINALD was charged with multiple crimes as a result of the March 29, 2017 "no-knock" raid on 1903 S. Izard Street.

---

[1] See photograph of REGINALD HARRIS' Arkansas state identification card, attached hereto as Exhibit B.

67.     On February 6, 2019, REGINALD's criminal defense attorney filed a motion in which she demanded that the Prosecuting Attorney's Office disclose the identity of the C.I. utilized in the alleged controlled drug buy at 1903 S. Izard Street which led to LRPD's March 29, 2017 "no-knock" raid on that residence.

68.     Upon information and belief, the claim by DEFENDANT SILAS that NARCOTICS DEFENDANTS engaged a C.I. to conduct an alleged controlled drug buy at 1903 S. Izard Street on March 29, 2017 is a false claim.

69.     Upon information and belief, the C.I. referenced in DEFENDANT SILAS' March 13, 2017 affidavit does not exist.

70.     Upon information and belief, because the C.I. referenced in DEFENDANT SILAS' March 13, 2017 affidavit does not exist, NARCOTICS DEFENDANTS could not produce a C.I. in court to testify against REGINALD, and the Prosecuting Attorney's Office thereafter dismissed Pulaski County Criminal Case No. CR 17-2708 on February 7, 2019.

71.     In February 2019, all criminal charges against REGINALD were dismissed.

72.     After the criminal charges against REGINALD were dismissed against him in February 2019, certain of the NARCOTICS DEFENDANTS began a campaign of harassment and intimidation against REGINALD which included an arrest by LRPD narcotics detectives on August 27, 2019 in North Little Rock.  The aforementioned campaign of harassment and intimidation against REGINALD continues to the day of the instant filing.

## COUNT I
### DEFENDANT BRAD SILAS AND DEFENDANT RUSS LITTLETON
### VIOLATION OF FOURTH AMENDMENT

73.     PLAINTIFFS hereby restate and reallege all preceding paragraphs as if fully set forth again in this paragraph.

74.     At all relevant times, police officers, such as DEFENDANT SILAS and DEFENDANT LITTLETON, had a duty to be truthful in affidavits seeking to obtain a search warrant to enter the dwelling of a Little Rock citizen and a duty not to omit from affidavits any material information.

75.     At all relevant times, police officers, such as DEFENDANT SILAS and DEFENDANT LITTLETON, had a duty to properly execute controlled drug purchases during sting operations so that they comply with the U.S. Constitution, particularly the Fourth Amendment, and also with LRPD policy and established police protocol.

76.     Despite these constitutional requirements and duties:

   a) DEFENDANT SILAS intentionally misrepresented the number of years employed as a police officer to obtain a "no-knock" warrant of 1903 S. Izard Street;

   b) DEFENDANT SILAS intentionally mispresented her professional experience conducting "no-knock" narcotics raids to obtain a "no-knock" warrant of 1903 S. Izard Street;

   c) DEFENDANT SILAS intentionally misrepresented the CI's experience to obtain a "no-knock" warrant of 1903 S. Izard Street;

   d) DEFENDANT SILAS intentionally misrepresented the CI's success rate to obtain a "no-knock" warrant of 1903 S. Izard Street;

   e) DEFENDANT SILAS and DEFENDANT LITTLETON intentionally misrepresented material aspects of the alleged drug purchase to obtain a "no-knock" warrant of 1903 S. Izard Street;

   f) DEFENDANT SILAS and DEFENDANT LITTLETON knew the C.I. did not by drugs from anyone at 1903 S. Izard Street but falsely represented that he did in order to obtain a "no-knock" warrant of 1903 S. Izard Street;

   g) DEFENDANT SILAS and DEFENDANT LITTLETON knew the C.I. they used was unreliable but falsely represented that the

16

C.I. was reliable in order to obtain a "no-knock" warrant of 1903 S. Izard Street; and

h) DEFENDANT SILAS and DEFENDANT LITTLETON failed to search or properly search the C.I. they used; and

i) Alternatively, DEFENDANT SILAS and DEFENDANT LITTLETON fabricated the existence of a C.I. and falsely claimed that a controlled drug buy occurred at 1903 S. Izard Street on March 13, 2017.

77.     By reason of the conduct of DEFENDANT SILAS and DEFENDANT LITTLETON, and each of them, PLAINTIFFS were deprived of rights, privileges and immunities secured to them by the Fourth and Fourteenth Amendments to the U.S. Constitution, and laws enacted thereunder.

78.     The acts committed by DEFENDANT SILAS and DEFENDANT LITTLETON, and each of them, were unnecessary, objectively unreasonable and excessive and were, therefore, in violation of their Fourth and Fourteenth Amendment Rights.  Therefore, DEFENDANT SILAS and DEFENDANT LITTLETON, and each of them, are liable to PLAINTIFFS in damages under 42 U.S.C. § 1983, including loss of liberty interest, punitive damages and attorney's fees.

<u>**COUNT II**</u>
**NARCOTICS DEFENDANTS AND SWAT DEFENDANTS**
**VIOLATIONS OF THE FOURTH AMENDEMENT–UNLAWFUL ENTRY**

79.     PLAINTIFFS hereby restate and reallege all preceding paragraphs as if fully set forth again in this paragraph.

80.     The Fourth Amendment prohibits unreasonable searches and seizures.  At all relevant times, police officers, including NARCOTICS DEFENDANTS and SWAT DEFENDANTS, have a duty to report violations of the U.S. Constitution that they observe or of which they are otherwise aware.

81.     At all relevant times, the LRPD had a Limits of Authority policy which required that "Little Rock Police Department personnel who are engaged in criminal investigations or law enforcement actions shall make sure that all persons are afforded the rights and protection guaranteed by the Constitution of the United States."

82.     NARCOTICS DEFENDANTS and SWAT DEFENDANTS, and each of them, engaged in unlawful, unconstitutional conduct by:

> a)  executing a search and seizure on the dwelling at 1903 S. Izard Street without a legitimate basis in law; and
>
> b)  executing a "no-knock" raid on the dwelling at 1903 S. Izard Street despite the lack of a "high risk" situation and other criteria.

83.     The March 29, 2017 "no-knock" raid conducted upon 1903 S. Izard Street by NARCOTICS DEFENDANTS and SWAT DEFENDANTS, and each of them, were unnecessary and unreasonable and caused PLAINTIFFS' injuries and damages.

84.     By reason of the conduct of NARCOTICS DEFENDANTS and SWAT DEFENDANTS, and each of them, PLAINTIFFS were deprived of rights, privileges and immunities secured to them by the Fourth and Fourteenth Amendments to the United States Constitution, and laws enacted thereunder.

85.     The acts committed by NARCOTICS DEFENDANTS and SWAT DEFENDANTS, and each of them, PLAINTIFFS were unnecessary, objectively unreasonable and excessive and were, therefore, in violation of their Fourth and Fourteenth Amendment Rights. Therefore, NARCOTICS DEFENDANTS and SWAT DEFENDANTS, and each of them, are liable to PLAINTIFFS in damages under 42 U.S.C. § 1983, including loss of liberty interest, punitive damages and attorney fees.

## COUNT III
## CITY OF LITTLE ROCK
## UNCONSTITUTIONAL OFFICIAL POLICY AND/OR
## UNCONSTITUTIONAL *MONELL* CUSTOM

86.     PLAINTIFFS hereby restate and reallege all preceding paragraphs as if fully set

forth again in this paragraph.

87.     At all relevant times, over the course of many years, there existed an

unconstitutional official policy and/or unconstitutional *Monell* custom at the LRPD whereby:

a) DEFENDANT BUCKNER required that all LRPD search warrants be executed with the assistance of the SWAT Unit, showing a deliberate indifference to the inherently dangerous nature of SWAT raids;

b) LRPD police officers intentionally misrepresented the number of years employed as a police officer;

c) LRPD police officers intentionally mispresented their professional experience conducting "no-knock" narcotics raids to obtain "no-knock" warrants;

d) LRPD police officers intentionally misrepresented C.I.s' experience to obtain "no-knock" warrants;

e) LRPD police officers intentionally misrepresented C.I.s' success rate to obtain "no-knock" warrants;

f) LRPD police officers intentionally misrepresented material aspects of alleged drug purchases to obtain no-knock warrants;

g) LRPD police officers falsely claimed to have observed material aspects of alleged drug purchases to obtain "no-knock" warrants;

h) LRPD police officers conspired with C.I.s and trafficked false information provided by C.I.s in order to obtain "no-knock" warrants;

i) a code of silence concealing police misconduct was tolerated and maintained to perpetuate the LRPD's unconstitutional practice of obtaining and executing "no-knock" warrants without a legal or justifiable basis; and

19

j) DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and SWAT DEFENDANTS concealed, intentionally mispresented and withheld material information during internal investigations in order to continue perpetrating the mandatory SWAT policy, to continue to obtain "no-knock" warrants and to protect LRPD police officers from criminal or civil liability.

88.    The allowance of this pattern was the result of deliberate indifference to fact that LRPD's official policies and/or customs were in violation of the Fourth Amendment and would naturally result in the violation of the constitutional rights of Little Rock citizens, including PLAINTIFFS.

89.    The official policy and/or *Monell* "custom" described above was the moving force behind the violations of PLAINTIFFS' constitutional rights and proximately caused PLAINTIFFS' constitutional injuries.  The official policy and/or *Monell* "custom" described above also proximately caused a deprivation of the rights, privileges and immunities secured to PLAINTIFFS by the Fourth and Fourteenth Amendments to the U.S. Constitution, and laws enacted thereunder.

90.    As a result of the official policies and/or customs described above, PLAINTIFFS' Fourth Amendment rights were violated.  Therefore, the CITY is liable to PLAINTIFFS in damages under 42 U.S.C. § 1983, including, loss of liberty interest, punitive damages and attorney fees.

**COUNT IV**
**DEFENDANT BUCKNER, NARCOTICS DEFENDANTS AND SWAT DEFENDANTS**
**CIVIL CONSPIRACY PER 42 U.S.C. § 1983**

91.    PLAINTIFFS hereby restate and reallege all preceding paragraphs as if fully set forth again in this paragraph.

92.     To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff.

93.     DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and SWAT DEFENDANTS conspired amongst themselves and others to deprive PLAINTIFFS of their constitutional rights.  DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and SWAT DEFENDANTS engaged in multiple overt acts in furtherance of the conspiracy alleged herein and these overt acts caused injury to PLAINTIFFS, including but not limited to:

    a)  conspiring to execute a "no-knock" raid upon 1903 S. Izard Street despite the fact that the NARCOTICS DEFENDANTS had no legal basis to do so;

    b)  conspiring to conceal fact that the NARCOTICS DEFENDANTS had no legal basis to search the dwelling located at 1903 S. Izard Street;

    c)  conspiring with the C.I. to illegally enter the residence at 1903 S. Izard Street; and

    d)  Alternatively, conspiring to conceal the fact that DEFENDANT SILAS and DEFENDANT LITTLETON never used a C.I. for a controlled drug buy at 1903 S. Izard on March 13, 2017 and the fact that no controlled drug buy occurred at said location on said date.

94.     By reason of the conduct of DEFENDANT BUCKNER, NARCOTICS DEFENDANTS, and each of them, PLAINTIFFS were deprived of rights, privileges and immunities secured to them by the Fourth and Fourteenth Amendments to the United States Constitution, and laws enacted thereunder.

95.     The acts committed by DEFENDANT BUCKNER and NARCOTICS DEFENDANTS, and each of them, PLAINTIFFS were unnecessary, objectively unreasonable and

excessive and were, therefore, in violation of their Fourth and Fourteenth Amendment Rights. Therefore, DEFENDANT BUCKNER and NARCOTICS DEFENDANTS, and each of them, are liable to PLAINTIFFS in damages under 42 U.S.C. § 1983, including loss of liberty interest, punitive damages and attorney fees.

## COUNT V
## NARCOTICS DEFENDANTS
## MALICIOUS PROSECUTION–STATE LAW

96.     PLAINTIFFS  hereby restate and reallege all preceding paragraphs as if fully set forth again in this paragraph.

97.     REGINALD was arrested without probable cause and in violation of Article 2, Section 15 of the Arkansas Constitution and in violation of the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101, *et seq.*   The acts, omissions and conduct of NARCOTICS DEFENDANTS complained of herein were willful, purposeful and malicious.

98.     NARCOTICS DEFENDANTS had REGINALD prosecuted for various crimes when they did not have probable cause to believe that he was guilty of these crimes.

99.     NARCOTICS DEFENDANTS acted with malice in working and conspiring with a C.I. who was well-known to be unreliable, to provide false information and to have prior convictions for filing false police reports.

100.    The malice of NARCOTICS DEFENDANTS is reflected in their fabricating false accounts, providing false information, submitting fraudulent affidavits, omitting exculpatory information and making other false representations, among other malicious acts.

101.    The malice of NARCOTICS DEFENDANTS is reflected in their knowing presentation of materially false and incriminating information to judges and magistrates.

102.   The malice of NARCOTICS DEFENDANTS is reflected in the continuation of criminal case against REGINALD despite knowing at all relevant times that there was no good faith probable cause determination.

103.   The malicious conduct of NARCOTICS DEFENDANTS resulted in damages to REGINALD.

104.   All criminal proceedings arising out of the charges brought by NARCOTICS DEFENDANTS against REGINALD terminated in her favor.

**COUNT VI**
**NARCOTICS DEFENDANTS**
**FALSE ARREST**

105.   PLAINTIFFS hereby restate and reallege all preceding paragraphs as if fully set forth again in this paragraph.

106.   NARCOTICS DEFENDANTS committed unlawful violations of certain REGINALD's personal liberty which consisted of detention without sufficient legal authority and which was not support by even arguable probable cause because the conduct of NARCOTICS DEFENDANTS was intentional.

**COUNT VII**
**NARCOTICS DEFENDANTS**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS–STATE LAW**

107.   PLAINTIFFS hereby restate and reallege all preceding paragraphs as if fully set forth again in this paragraph.

108.   NARCOTICS DEFENDANTS engaged in intentional and reckless conduct, which was equally extreme and outrageous.

109.   That there is a causal connection between the wrongful and fraudulent conduct committed by NARCOTICS DEFENDANTS and the emotional distress suffered by

PLAINTIFFS. PLAINTIFFS' emotional distress consists of terrifying flashbacks, extreme anxiety, claustrophobia, nightmares, chronic bedwetting, fear of police officers and/or other manifestations and is severe.

**COUNT VIII**
**DEFENDANT KENTON BUCKNER**
**SINGLE ACT SUPERVISORY LIABILITY**

110.    PLAINTIFFS hereby restate and reallege all preceding paragraphs as if fully set forth again in this paragraph.

111.    At all relevant times, DEFENDANT BUCKNER knew that "no-knock" warrants were reserved for "high-risk situations," and that it is unconstitutional and unlawful to knowingly submit affidavits which contain material misrepresentations of fact or are otherwise untruthful to judges or magistrates in order to obtain "no-knock" warrants. At all relevant times, DEFENDANT BUCKNER knew the inherently dangerous nature of SWAT entries.

112.    Nonetheless, DEFENDANT BUCKNER, the CITY's final policymaker, consciously disregarded this known risk by:

a) promulgating official policy and/or custom in conflict with United States Constitution;

b) Failing to abolish official policy and/or custom in conflict with United States Constitution;

c) Permitting informal custom for SWAT in conflict with United States Constitution and LRPD policies; and

d) Allowing officers with a demonstrable history of materially misrepresenting facts in sworn affidavits to obtain "no-knock" warrants to continue to execute sworn affidavits with materially misrepresented facts to obtain search warrants.

113.    That there is a direct link between the official policy and/or custom promulgated or continued by DEFENDANT BUCKNER and the constitutional injuries sustained by PLAINTIFFS.

114.    The acts and omissions of the DEFENDANT BUCKNER described above were the moving force behind the violations of PLAINTIFFS' constitutional rights and proximately caused PLAINTIFFS' constitutional injuries.  The official policy and/or custom described above also proximately caused a deprivation of the rights, privileges and immunities secured to PLAINTIFFS by the Fourth and Fourteenth Amendments to the United States Constitution, and laws enacted thereunder.

115.    As a result of the official policies and/or customs described above, PLAINTIFFS' Fourth Amendment rights were violated.  Therefore, the DEFENDANT BUCKNER is liable to PLAINTIFFS in damages under 42 U.S.C. § 1983, including, loss of liberty interest, punitive damages and attorney fees.

**COUNT IX**
**DEFENDANT KENTON BUCKNER AND THE CITY OF LITTLE ROCK FOR**
**VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT AND THE**
**REHABILITATION ACT OF 1973**

116.    PLAINTIFFS hereby restate and reallege all preceding paragraphs as if fully set forth again in this paragraph.

117.    The CITY is a local governmental entity which engages in offering and providing police services to members of the general public, including mentally ill persons, and is a recipient of federal funds.

118.    Section 504 requires the recipients of federal funds to make reasonable accommodations to persons with disabilities in their facilities and program activities, and for those who receive their services.  It further requires such recipients to modify such facilities, services

25

and programs as necessary to accomplish this purpose. The CITY is the recipient of federal funds and is subject to the mandate of Section 504.

119.   The ADA defines discrimination as the failure to take necessary steps to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of services for the disabled. Such services include, *inter alia*, provisions necessary to achieve mental health care and protect individuals known to suffer from mental illness from in-custody death, excessive force and the use of force when law enforcement encounters them in circumstances constituting a mental health episode.

120.   On March 29, 2017, and at all relevant times, including during his interaction with NARCOTICS DEFENDANTS and SWAT DEFENDANTS, REGINALD was a qualified individual with a disability under Section 504 and under the ADA.

121.   The CITY is an entity which must comply with Section 504 and under the ADA.

122.   On March 29, 2017, and at all relevant times, DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and SWAT DEFENDANTS, and each of them, are individuals who were employed by, associated with or otherwise acting as authorized representatives or agency of the CITY.

123.   On March 29, 2017, and at all relevant times, DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and SWAT DEFENDANTS, and each of them, were the employees, agents, servants, and/or representatives of the CITY and, in doing the things alleged herein, were acting within the course and scope of said agency or employment.

124.   Instead of accommodating REGINALD's disability, the CITY and its employees, agents, servants, and/or representatives, including DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and SWAT DEFENDANTS, refused to provide the necessary level of

accommodation to REGINALD's disability, thereby causing him great physical and mental injuries and pain.

WHEREFORE, PLAINTIFFS pray for judgment against NARCOTICS DEFENDANTS in an amount which will fully and fairly compensate them for the damages suffered and asserted herein, including:

1. That Defendants be required to pay PLAINTIFFS' compensatory damages;

2. That Defendants be required to pay actual damages;

3. That DEFENDANT BUCKNER, NARCOTICS DEFENDANTS and SWAT DEFENDANTS be required to pay punitive damages;

4. That Defendants be required to pay attorney fees per 42 U.S.C. § 1988;

5. That this Honorable Court provide appropriate injunctive relief;

6. That this Honorable Court declare that the LRPD's official policies and/or customs described herein are unconstitutional; and

7. That PLAINTIFFS have any other such relief as this Honorable Court deems just and proper.

Respectfully submitted,

Michael J. Laux
Michael J. Laux
E. Dist. Arkansas Bar No. 6278834
One of the Attorneys for PLAINTIFFS
LAUX LAW GROUP
400 W. Capitol Avenue, Suite 1700
Little Rock, AR 72201
Telephone: (501) 242-0750
Facsimile: (501) 372-3482
E-mail: mlaux@lauxlawgroup.com
mikelaux@icloud.com

27

and

Benjamin L. Crump
E. Dist. Arkansas Bar No. 0072583
One of the Attorneys for PLAINTIFFS
BEN CRUMP, PLLC
122 S. Calhoun Street
Tallahassee, FL 32201
Telephone: (850) 224-2020
Email: ben@bencrump.com

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

REGINALD HARRIS and
LATASHA MAXWELL, individually,
and as Next Friends of
MONTAVION HARRIS and
LATASHJA HARRIS, Minors,
MONTASHIA HARRIS,
KEVONTAY BARNES,
LATRICE ROBINSON, as Next Friend of
PAICHANCE JAMES, a Minor,
MAKISHA MAXWELL, as Next Friend of
KEVIN YOUNG, a Minor                                   **PLAINTIFFS**

**V.**                        **NO. 4:20-CV-259-JM**

**CITY OF LITTLE ROCK, ET AL.**                       **DEFENDANTS**

<u>**JOINT STIPULATION OF DISMISSAL WITHOUT PREJUDICE**</u>

**IT IS HEREBY STIPULATED** by and between the parties to this action that the above-captioned case should be dismissed without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii).

Respectfully submitted,

Michael J. Laux
Laux Law Group
400 W. Capitol Avenue
Suite 1700
Little Rock, AR 72201
TELEPHONE: (501) 242-0750
EMAIL: mlaux@lauxlawgroup.com

Benjamin J. Crump
Ben Crump Law, PLLC
122 South Calhoun Street
Tallahassee, FL 32301
TELEPHONE: (850) 224-2020
EMAIL: court@bencrump.com

Attorneys for Plaintiff

**Exhibit A**

David M. Fuqua, AR Bar No. 80048
Fuqua Campbell PA
Riviera Tower
3700 Cantrell Road, Suite 205
Little Rock, AR 72202
TELEPHONE: (501) 374-0200
EMAIL: dfuqua@fc-lawyers.com

Annie Depper, AR Bar No. 2009267
Fuqua Campbell PA
Riviera Tower
3700 Cantrell Road, Suite 205
Little Rock, AR 72202
TELEPHONE: (501) 374-0200
EMAIL: adepper@fc-lawyers.com

William C. Mann, III, AR Bar No. 79199
Attorney for Separate Defendants
P.O. Box 38
North Little Rock, AR 72115
TELEPHONE: 501-374-3484, ext. 231
EMAIL: bmann@arml.org

Gabrielle Gibson, AR Bar No. 2018113
Attorney for Separate Defendants
Post Office Box 38
North Little Rock, AR  72115
TELEPHONE: (501) 537-3783
EMAIL: ggibson@arml.org

M. Keith Wren, AR Bar No. 94017
Attorney for Separate Defendants
11300 Executive Center Drive, Suite A
Little Rock, AR  72211
TELEPHONE: (501) 223-0025
EMAIL: mkwren@wrenlawfirm.com

Attorneys for Separate Defendants, Robert
Bell, Matt Nelson, Travis Cumming, Cedric
Nelson, Brad Silas, Russ Littleton, Loni
Lichti in their individual capacities


AND

- 2 -

Rick D. Hogan
Deputy City Attorney
500 West Markham Street
Room 310
Little Rock, AR 72201
TELEPHONE: (501) 371-4675
EMAIL: rhogan@littlerock.gov

Attorney for Separate Defendants, City of
Little Rock and Kenton Buckner, in his
individual and official capacities



**Exhibit B**